**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**NANCY GALLEGOS,**

      **Plaintiff,**

-vs-                   Case No.  6:06-cv-1131-Orl-UAM

**COMMISSIONER OF SOCIAL**
**SECURITY,**

      **Defendant.**

_____

## MEMORANDUM OF DECISION

  Plaintiff Nancy Gallegos ["Gallegos"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying her application for a period of disability and disability insurance benefits. Doc. No. 1. For the reasons set forth below, the Commissioner's decision is remanded pursuant to sentence four of 42 U.S.C. § 405 (g).

**I. PROCEDURAL HISTORY**

  Gallegos was involved in a motor vehicle accident on July 21, 2002, and protectively filed a claim for disability insurance benefits and supplemental security income benefits on December 17, 2002, claiming disability as of the date of her accident due to herniated discs, nerve damage, headaches, pain, memory loss, and forgetfulness. R. 39-42. She is insured for disability insurance benefits through June 30, 2003. R. 34. Her claim for benefits was denied initially and upon reconsideration. R. 29-30, 32-33. On October 25, 2005, the Honorable Jimmy Coffman, Administrative Law Judge ["ALJ"], held an eighteen-minute hearing on Gallegos's claim in Titusville,

Florida.  R. 395-413.  Non-attorney Rick Gach represented Gallegos at the hearing. R. 395.  The ALJ heard testimony from Gallegos.  R. 396.

On February 16, 2006, the ALJ issued a decision that Gallegos was not disabled and not entitled to benefits.  R. 12-19.  Following a review of the medical and other record evidence, the ALJ found that Gallegos retained the residual functional capacity ["RFC"] to lift and carry up to twenty pounds occasionally and ten pounds frequently; sit, stand, or walk approximately six hours in an eight-hour workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl.  R. 19, Finding 6.  Gallegos had to avoid moving machinery and heights.  The ALJ also found that Gallegos' "organic mental disorder and affective disorder have imposed mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace without episodes of decompensation." *Id.*  After consulting the Dictionary of Occupational Titles ["DOT"], the ALJ concluded that Gallegos was not precluded from her past work as a cashier as the job is "generally performed in the national economy."  R. 18, 19, Findings 7, 8.  The ALJ therefore concluded that Gallegos was not disabled.  R. 19, Finding 9.

On June 1, 2006, the Appeals Council denied review.  R. 4-6.  On August 2, 2006, Gallegos timely appealed the Appeals Council's decision to the United States District Court.  Doc. No. 1.  On January 5, 2007, Gallegos filed in this Court a memorandum of law in support of his appeal.  Doc. No. 16.  On March 5, 2007, the Commissioner filed a memorandum in support of his decision that Gallegos was not disabled.  Doc. No. 17.  The appeal is ripe for determination.

## II.     THE PARTIES' POSITIONS

Gallegos assigns two errors to the Commissioner.  First, Gallegos claims that the ALJ erred in by improperly discounting the effects of Gallegos' mental retardation, in particular, as determined by Dr. Ronald Seifer, a consultative examiner.  Doc. No. 16 at 12.  Second, Gallegos claims that the ALJ accorded excessive weight to the opinions of the non-examining state agency consultant in determining the nature and extent of Gallegos' mental impairments.  *Id.*[1]

The Commissioner argues overall that substantial evidence supports the ALJ's decision. Doc. No. 17.  The Commissioner further responds that Gallegos was never diagnosed with mental retardation; that Gallegos did not meet the strict standard for automatic disability under the Listings; and that the ALJ properly evaluated the medical evidence, including the opinions and findings of both Dr. Seifer and the non-examining state agency consultant.

## III.    THE STANDARD OF REVIEW

### A.      AFFIRMANCE

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g.  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553,

---

[1] The Commissioner argues that Gallegos only presents one issue on appeal, which the Commissioner decribes as whether Gallegos' "impairments met section 12.05 of the Listing of Impairments [the listing for mental retardation] and therefore, that the ALJ improperly failed to evaluate whether she met this Listing."  Doc. No. 17 at 5.  Gallegos' presentation of her issues on appeal are confusing.  On a closer reading of Gallegos' brief, however, it appears to the Court that Gallegos' argument as to Gallegos' mental retardation is broader (i.e., whether the ALJ properly evaluated the effects of Gallegos' mental retardation on her overall functioning and/or whether the ALJ failed to evaluate the applicability of the Listing on mental retardation).  *See* Doc. No. 16 at 12.  Further, the issue of whether the ALJ assigned too much weight to the non-examining state agency consultant's opinion as to the nature and extent of Gallegos' impairments appears to be a separate (but related) issue.  *See id.*

1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991. The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied.

### B.     REMAND

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996. To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir.

1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled.

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment. On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation. After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.[2] *Id.*

## IV.   THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

---

[2]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.* Any Gallegos intending to seek attorney's fees for past-due benefits under 42 U.S.C. § 406 (b)(1)(A) shall move the Court to include in any remand order an extension of the 14-day period described in Fed. R. Civ. P. 54 (d)(2)(B) so as to specify an extended deadline that follows the Commissioner's determination of Gallegos's past-due benefits. *Bergen v. Comm'r of Soc. Sec.*, 454 F. 3d 1273, 1278 n.2 (11th Cir. 2006).

which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

### A.   THE FIVE STEP EVALUATION

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his or her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ["the Listings"], she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him or her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his or her residual functional capacity, age, education, and past work) prevent him or her from doing other work that exists in the national economy, then claimant is disabled. 20 C.F.R. § 404.1520(f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534

(11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588 - 89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.2d 1214, 1219 (11th Cir. 2001).

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). In this step, the ALJ assesses the claimant's residual functional capacity ["RFC"]. This assessment measures whether a claimant can perform past relevant work despite his or her impairment. 20 C.F.C. § 404.1520 (f); *see also, Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.C. § 404.1545(b).

The ALJ first considers whether the claimant has the RFC to perform the functional demands and duties of a past job as actually performed by the claimant. *See* SSR 82-61. If so, the claimant is not disabled. If not, the ALJ then considers whether the claimant can perform the functional demands of the job as it is generally performed in the national economy. SSR 82-61.

### B.     EVALUATING MEDICAL SOURCE OPINIONS

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. The ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  Without the ALJ making the necessary findings, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence.  *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).

## V.     APPLICATION AND ANALYSIS

### A.     THE FACTS[3]

Gallegos was born on May 4, 1980 and was twenty-two years old when she filed her claim for benefits and twenty-five years old on the date of the ALJ's decision to deny benefits.  R. 12, 39. Gallegos has never received any mental health treatment, and she does not take medication for depression or anxiety.  *See* R. 411.

The record contains academic and psychological testing records from Alamogordo Public Schools in New Mexico (where Gallegos attended school), which include a psychological evaluation and intelligence testing from 1993 through 1996.  R. 89-120.   Wechsler intelligence testing

---

[3] At the administrative level, Gallegos claimed disability mostly due to her physical impairments, so the record is largely comprised of notes from doctors and a chiropractor who treated Gallegos for her physical ailments.  Because Gallegos claims error on appeal only as to the ALJ's evaluation of her mental impairments, the Court has summarized only the record evidence related to Gallegos' mental impairments, although the Court considered the record as a whole.

administered in 1990 indicated that Gallegos had a verbal IQ of 74[4], a performance IQ of 87, and a Full-Scale IQ of 79.  R. 91.

On February 19, 1993, Dr. Richard A. Stauffacher, a licensed clinical psychologist, completed a psychological evaluation upon referral from the Alamogordo Public Schools due to her academic and behavioral problems in school.  R. 117-20.  At the time, Gallegos was almost thirteen years-old.  *See* R. 117.  Dr. Stauffacher noted that Gallegos was as "Learning Disabled student" as of December 1986, and that her "most recent psychodiagnostic evaluation . . . [indicated] that [Gallegos] exhibited low average to average intellectual functioning, a continuing learning disability in the area of written language, and excessive aggressiveness . . ."  R. 118.  Dr. Stauffacher concluded that Gallegos was a possible candidate for additional counseling, and opined that the doctor "would not be surprised if she is minimizing the extent to which she has some real psychological concerns."  R. 120.  The psychologist also stated that Gallegos was "definitely eligible for either psychological services or Special Education counseling services, and it would be wise for school counseling to consider the possibility of having [Gallegos] continue in her group counseling for social skills and anger management concerns, while providing individual therapy for her as well."  *Id.*  Dr. Stauffacher further discussed the possibility of referring Gallegos to Children's Psychiatric Hospital, and diagnosed Gallegos "Oppositional Defiant Disorder, mainly in the school setting" and "Developmental Expressive Writing Disorder, mild."  *Id.*

---

[4]The DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (American Psychiatric Association 4th Ed. 1994) ["DSM-IV"] describes "borderline intellectual functioning" as an IQ in the 71 to 84 range, and mental retardation as an IQ of 70 or below.

Weschler intelligence testing from 1995 indicated a Performance IQ of 87. R. 94. Her math composite and math computation scores were both 66. *Id.* Based on her 1995 and earlier test results, the evaluator concluded that Gallegos was "Learning Disabled" for the purposes of the public school procedures. *Id.* The evaluator defined "Learning Disabled" as "a disorder in one or more of the basic psychological processes involved in the understanding or in using language, spoke or written, which may manifest itself in an inability to think, speak, read, write, spell, or to perform mathematical calculations." *Id.*

On November 29, 2003, Ronald L. Seifer, Ph.D., a licensed clinical psychologist, completed a consultative examination of Gallegos' mental status at the request of the office of Disability Determinations. R. 282-84. Gallegos reported that she worked as a cashier for a year before her motorcycle accident on July 21, 2002. R. 282. She complained of having memory problems since the accident. *Id.* During the mental status examination, Dr. Seifer noted that her "affect showed some sadness and worry," and that her mood was "alexithymic, 'not happy and not sad.'" R. 283. Her thought processes appeared intact; her speech was understandable; and she was oriented. *Id.* She recalled three out of three items immediately, but she recalled only two out of the three items after five minutes. *Id.* Gallegos also spelled the word "world" backwards and forwards, but she was unable to "abstract most proverbs that are given." Id. She attempted to count on her fingers the number of nickels in $1.35, and she determined that forty-five nickels equaled $1.35. *Id.* Her verbal fluency was "poor"; her "judgment and insight into the nature of her problems [were] partial." *Id.* Dr. Seifer estimated her "to probably be functioning within the range of borderline intelligence." *Id.* Dr. Seifer recommended a neurocognitive evaluation and obtaining Gallegos' past academic records to assist in

differentiating the effects of her head injury on her premorbid history of cognitive problems. *Id.* His diagnostic impressions included: (1) Depressive Disorder, (2) Provisional Cognitive Disorder, "needing neurocognitive evaluation," (3) "Rule out Learning Disorder," (4) "Rule out Borderline Intellectual Functioning," (5) mild to moderate restrictions in activities of daily living and social functioning, (6) "at least moderate difficulties in maintaining concentration, persistence, or pace needing further evaluation," and (7) no episodes of decompensation within the last year. R. 284.

After reviewing Gallegos' Alamogordo Public School records, Dr. Seifer completed another evaluation of Gallegos on February 23, 2004. He noted that the 1990 testing showed a Full-Scale IQ of 79, but he observed that:

> [t]he coding subtest, however, was not administered, which may result in a spuriously high performance IQ as she does have nonverbal attentional problems. Her academic functioning [on another test] in 1995 indicated a deficiency in math with other subtests borderline to low average. She was diagnosed with a specific learning disability and oppositional disorder.

R. 285. Dr. Seifer conducted additional testing and administered the RBANS, Wechsler Adult Intelligence Scale ("WAIS"), and Woodcock-Johnson III tests, R. 286, and observed that Gallegos was cooperative; that she spent "full time in tasks [but was] not always productive"; and that the results from the tests administered by him "are viewed as a representative sample of her current functioning." R. 285. The WAIS testing revealed a verbal IQ of 75, a performance IQ of 69, and a full-scale IQ of 70. R. 286. In evaluating Gallegos' test results, Dr. Seifer stated that "Gallegos' borderline Verbal functioning and mildly retarded performance functioning yields a Full Scale IQ at the upper bounds of mild mental retardation." *Id.* He also observed that her "working memory index is 75, which also

-11-

taps auditory attention and short-term memory functioning" and that "[i]n sum, there appears to be a lowering of Performance functioning." *Id.* Dr. Seifer concluded:

> Overall[,] there appears to be preservation of language and learning skills with some lowering of performance skills and attentional features. Closed head injuries can have slowing of cognitive processing speed and memory impairments. Her memory appears stable. This appears (sic) mainly a lowering of attentional factors and some nonverbal performance functioning... The performance attention, however, appears lowered and was not adequately measured in 1990. Thus, this does seem (sic) a mild nonverbal attentional problem more exacerbated (sic). Her full IQ score is very deficient as well. A full neurocognitive examination by a neuropsychologist would be suggested by these screening results.

R. 287. Dr. Seifer's "diagnostic impressions" were depressive disorder, cognitive disorder, and "Status post head injury, herniated bulging discs, per medical record." *Id.* He also stated that Gallegos was "competent to manage her own funds," and concluded that she had moderate restrictions in activities of daily living and in maintaining social functioning, moderate to marked difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation requiring psychiatric hospitalization within the previous year. *Id.*

Alejandro Vergara, M.D., a non-examining state agency psychiatrist, completed a Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment on December 24, 2003 and updated the form on March 25, 2004, after review of Dr. Seifer's second evaluation. R. 290, 305. Dr. Vergara opined that Gallegos had an organic mental disorder and an affective disorder, and that she had mild restriction of activities of daily living; mild difficulties maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. R. 300. Dr. Vergara opined that Gallegos was "moderately limited" in her abilities to: understand and remember detailed instructions, carry out detailed instructions, "complete a normal

workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and set realistic goals or make plans independently of others. R. 305-06. The psychiatrist further stated that Gallegos "appears capable of doing simple, repetitive type tasks and assignments." R. 307.

**B.   THE ANALYSIS**

**1.   Mental Retardation**

Gallegos first argues that the ALJ failed to evaluate the effect of Gallegos' mental retardation on Gallegos' overall functioning, in particular, as articulated in Dr. Seifer's opinions and findings. Gallegos further argues that the ALJ should have specifically evaluated whether she met or equaled Listing 12.05, the listing for mental retardation. The Commissioner responds that Gallegos was never diagnosed with mental retardation; that Gallegos did not meet the strict standard for automatic disability under the Listings; and that the ALJ properly evaluated the medical evidence, including the opinions and findings of both Dr. Seifer and the non-examining state agency consultant.

The ALJ's findings on Gallegos' intellectual functioning – as distinct from Gallegos' mental and affective disorders[5] – are vague. R. 16. The ALJ, in fact, observed that the test results from Dr. Seifer indicate "a full scale IQ of 70, placing her within the upper range of mild mental retardation functioning"; that "[t]he medical evidence also shows that [Gallegos] has a history of learning disabilities and depression"; and that "[a] WISC-R performed in 1995 suggesting (sic) mild mental

---

[5]The ALJ first found that Gallegos had "the following medically determinable impairments: degenerative disc disease of the lumbar and cervical regions of the spine, post-traumatic headaches, status post head injury, an organic mental disorder and an affective disorder" and that "[t]hese impairments significantly interfere with her ability to perform work-related activities and, therefore, are severe." R. 16 (emphasis added). The ALJ did not discuss mental retardation or any specific Listing, but stated that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show limitations or medical signs or findings that are the same or equivalent to those of any listed impairment." *Id.*

retardation." R. 15, 17.  The ALJ did not specifically reject these suggestions of "mild mental retardation."  Rather, the ALJ then noted that Gallegos complained of "problems with memory and concentration" and then found that Gallegos' "symptoms [were] somewhat exaggerated." *Id.*  Also, the ALJ did not specifically reject the 2004 IQ test results or evaluate why Gallegos' below-average intellectual functioning did not affect her RFC.[6]  Instead, the ALJ stated that "Dr. Seifer's opinions as to [Gallegos'] mental limitations . . . [were] somewhat exaggerated and inconsistent with the medical evidence as a whole" based on Gallegos' ability to take care of her two young children; appropriate social skills; alertness and orientation; lack of "overt symptoms of psychosis"; and lack of "mental health treatment or psychiatric hospitalization." *Id.*  These reasons are relevant to evaluating Gallegos' mental and affective disorders, but, without further explanation by the ALJ, it is unclear how they (particularly the issue of mental health treatment and hospitalization) are related to the IQ test results and suggestions of mental retardation.

Thus, in general, the Commissioner is correct that the standard for automatic disability under the Listings is strict and that the ALJ need not mention each specific Listing he considered.  Further, this Court makes no finding that Gallegos met the Listing.  The Court finds, however, that remand is required because the ALJ's findings regarding Gallegos' intellectual functioning are vague and because it is not clear that the ALJ sufficiently considered and evaluated the evidence regarding Gallegos' intellectual functioning and mental retardation.  Accordingly, this case is remanded for

---

[6]In his RFC Finding, the ALJ then concluded that Gallegos' "organic mental disorder and affective disorder" resulted in "moderate difficulties in maintaining concentration, persistence or pace" and did not mention intellectual functioning or mental retardation.  R. 18.

-14-

further evaluation of Gallegos' intellectual functioning and further evaluation of Dr. Seifer's findings and opinions.

### 2. Weighing the Medical Opinions

Gallegos also claims that the ALJ improperly accorded significant weight to Dr. Vergara, a non-examining [psychiatrist], in determining the nature and extent of Gallegos' mental impairments and limitations. Doc. No. 16 at 14. The Commissioner responds that Gallegos' argument is "without merit" and that the ALJ did not rely solely on Dr. Vergara's assessment in making his decision. Doc. No. 17 at 13-14.

The ALJ's findings regarding Dr. Vergara's opinions are also confusing, and, in fact, the Court cannot discern what weight the ALJ assigned to the psychiatrist's opinions. The ALJ purported to assign "considerable weight" to the opinions of all of the non-examining state agency consultants, including Dr. Vergara. R. 17. However, the ALJ only concluded that Gallegos' "organic mental disorder and affective disorder" resulted in "moderate difficulties in maintaining concentration, persistence or pace" and did not mention Dr. Vergara's opinions that Gallegos was "moderately limited" in her abilities to: understand and remember detailed instructions; carry out detailed instructions;"complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; and set realistic goals or make plans independently of others. *Compare* R. 17-18 *with* R. 305-06.

Furthermore, the ALJ's RFC finding as to Gallegos' mental impairments is inconsistent with his finding that Gallegos could perform her past relevant work as a cashier. In determining whether

further evaluation of Gallegos' intellectual functioning and further evaluation of Dr. Seifer's findings and opinions.

### 2. Weighing the Medical Opinions

Gallegos also claims that the ALJ improperly accorded significant weight to Dr. Vergara, a non-examining [psychiatrist], in determining the nature and extent of Gallegos' mental impairments and limitations. Doc. No. 16 at 14. The Commissioner responds that Gallegos' argument is "without merit" and that the ALJ did not rely solely on Dr. Vergara's assessment in making his decision. Doc. No. 17 at 13-14.

The ALJ's findings regarding Dr. Vergara's opinions are also confusing, and, in fact, the Court cannot discern what weight the ALJ assigned to the psychiatrist's opinions. The ALJ purported to assign "considerable weight" to the opinions of all of the non-examining state agency consultants, including Dr. Vergara. R. 17. However, the ALJ only concluded that Gallegos' "organic mental disorder and affective disorder" resulted in "moderate difficulties in maintaining concentration, persistence or pace" and did not mention Dr. Vergara's opinions that Gallegos was "moderately limited" in her abilities to: understand and remember detailed instructions; carry out detailed instructions;"complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; and set realistic goals or make plans independently of others. *Compare* R. 17-18 *with* R. 305-06.

Furthermore, the ALJ's RFC finding as to Gallegos' mental impairments is inconsistent with his finding that Gallegos could perform her past relevant work as a cashier. In determining whether

Gallegos could perform her past relevant work as a cashier, "as generally performed in the national economy," the ALJ only observed that Gallegos would be required to lift twenty pounds. R. 187. The ALJ then cited the DOT listing for the cashier job, and concluded, without further explanation, that Gallegos would be able to perform that work "which is described as light in physical demands and unskilled in nature." *Id.* The ALJ did not further discuss requires of the job, as described in the DOT[7]; the effect of Gallegos' mental impairments, which the ALJ himself determined involved "moderate difficulties in maintaining concentration, persistence, or pace"; and why these impairments did not preclude Gallegos from performing her past relevant work. *See id.* The Court further observes that the Eleventh Circuit has stated that:

> [t]he burden of showing by substantial evidence that a person who can no longer perform his former job can engage in other substantial gainful activity is in almost all cases satisfied only through the use of vocational expert testimony. While in exceptional cases testimony by a vocational expert may not be necessary ... the general rule is that such testimony is required.

*Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986) (citing *Ferguson v. Schweiker*, 641 F.2d 243, 247-48 (5th Cir. 1981)). Accordingly, remand is necessary for further evaluation and explanation of Gallegos' mental impairments related to both her mental and affective disorders and her intellectual

---

[7] The relevant DOT definition states, for example, that the cashier position requires, among other things, the abilities to:

Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations . . . . Add, subtract, multiply, and divide all units of measure. Perform the four operations with like common and decimal fractions. Compute ratio, rate, and percent. Draw and interpret bar graphs. Perform arithmetic operations involving all American monetary units . . . . Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.

DOT 211.462-010.

functioning, as opined by both Dr. Seifer and Dr. Vergara, and for further explanation of and/or vocational expert testimony on whether Gallegos can perform her past relevant work.

## V.   **CONCLUSION**

For the reasons stated above, the decision of the Commissioner is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405 (g).  The Clerk should enter a judgment and close the case.

**DONE AND ORDERED** this 14th day of August, 2007.

*Donald P. Dietrich*
DONALD P. DIETRICH
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk Mail
Copies of this Order to All Counsel of
Record and to:

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Paul Jones, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia       30303-8920

Susan Roark Waldron
Assistant United States Attorney
400 N. Tampa St., Suite 3200
Tampa, FL            33602

The Honorable Jimmy Coffman
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL           32817